FILED
2025 Dec-03 PM 09:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA – WESTERN DIVISION

| | | |
|---|---|---|
| ESTATE OF TRISTAN CLARK, | ) | |
| DECEASED, by | ) | |
| & through JACOYA CLARK, | ) | |
| PERSONAL REPRESENTATIVE, | ) | CASE NO.: 7:25-cv-02061-EGL |
| MINOR CHILDREN OF THE | ) | |
| DECEASED, K.C., D. W., & M.C. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF TUSCALOOSA, | ) | **DEMAND FOR JURY TRIAL** |
| CHIEF BRENT BLANKLEY, | ) | |
| JOHN BEASLEY, & AUSTIN RAY, | ) | |
| in their | ) | |
| individual & and official capacities | ) | |
| | ) | |
| Defendants. | ) | |

### AMENDED COMPLAINT

COMES NOW, Jacoya Clark, Personal Representative, for the Estate of Tristan Clark, deceased (hereinafter "Plaintiff"), by and through his counsel of record, and files her Amended Complaint against the above-named defendants in their individual and official capacities.

### I. INTRODUCTION

1.   This cause of action is for money damages brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Tristan Clark's clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution against Defendants: the City of Tuscaloosa,

Tuscaloosa Police Chief, Brent Blankley, West Alabama Narcotics Agents John Beasley and Austin Ray  in their respective capacities as duly-certified law enforcement officers employed by the City of Tuscaloosa Police Department (collectively, the "Defendants"), for their respective violations of Mr. Clark's right to be free from the use of excessive deadly force; and (2) Defendant City of Tuscaloosa ("Tuscaloosa" or the "City") and Chief Blankley for its unconstitutional policies, customs and/or practices under *Monell* and its progeny.

## Jurisdiction and Venue

2.  This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983, 1988.

3.  Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the District of Alabama. Moreover, upon information and belief, all of the parties reside in this Judicial District.

## The Parties

4.      At all times relevant hereto and until the *time* of his death on December 20, 2023, Plaintiff, decedent Tristan Clark was a citizen of the United States and the city of Tuscaloosa, County of Tuscaloosa, and State of Alabama.

5.    Jacoya Clark, the mother of the deceased and duly appointed as personal representative of Tristan Clark's estate, resides in Tuscaloosa County, Alabama. (Exhibit 1-Letters of Administration).

6.    Mr. Clark is survived by his three young minor children, K.C., D. W., and M. C., who were ages 4, 3 and 5 months, respectively when their father, Tristan Clark, deceased was killed by a West Alabama Narcotics Agent believed to be John Beasley.

7.    The City of Tuscaloosa is and was at all times material hereto a duly organized municipal corporation organized under the laws of the State of Alabama, and existing under and by virtue of the laws of Alabama.

8.    Chief Brent Blankley ("Blankley") is and was at all times material hereto, the Police Chief of Tuscaloosa who approved or authorized providing the firearms carried by Beasley and Ray and the vehicle used in the fatal traffic stop, through which he is in charge of overseeing policing functions of the department.

9.    Upon information and belief, John Beasley and was at all times material hereto a citizen of the United States and the State of Alabama.

10.    Upon information and belief Beasley was at all times material hereto employed by the Tuscaloosa as a duly appointed and sworn law enforcement officer and was acting in his individual capacity and/or under the color of state law in his official capacity, and within the scope of his employment.

11.    Upon information and belief, Austin Ray is and was at all times material hereto a citizen of the United States and the state of Alabama.

12.    Austin Ray was at all times material hereto employed by the Tuscaloosa Police as a duly appointed and sworn law enforcement officer and was acting in his individual capacity and/or official capacity under the color of state law, and within the scope of his employment.

### Facts Common To All Forms Of Relief

13.    On December 20, 2023, Tristan Clark was riding as a passenger in a black 2020 Honda Accord along with front seat passenger Patrick Green ("Green") and the driver Nate Johnson ("Johnson") while traveling on 37th Street East in Tuscaloosa, near Bowers Park, which is located near James Harrison Jr. Parkway.

14.    Tristan Clark was seated on the rear passenger side directly behind Patrick Green when the vehicle was pulled over by two Caucasian plain clothed Tuscaloosa narcotics agents believed to be Beasley and Ray, working as part of the Western Alabama Narcotic Task Force ("WANTF") who were driving an unmarked SUV Tuscaloosa police vehicle.

15.    At all times thereto and prior to being pulled over by Beasley and Agent 2, the driver, Nathaniel Johnson, obeyed all applicable traffic

laws and was not driving in a manner to justify or give probable cause to a traffic stop by Beasley and Austin Ray.

16.    Beasley stated to Johnson that he pulled him over due to a suspected tint violation, although Beasley didn't have a tent meter test device and subsequently never tested the vehicle for a tint violation and was working as a narcotics officer when the illegal traffic stop was made.

17.    Prior to stopping Johnson's vehicle, the defendants Beasley and Ray were traveling south on 37th Street in the opposite direction from Johnson's vehicle when their vehicle made a sudden U-turn and pulled behind Johnson's vehicle and followed the vehicle for a short distance before turning on the siren and blue lights. Mr. Johnson complied and pulled over immediately thereafter.

18.    Defendants Beasley and Ray exited the unmarked police vehicle with firearms drawn and pointed at Clark, Johnson and Green while approaching the driver's side and the passenger's side of the Honda.

19.    Beasley approached the driver's side and asked for Johnson's identification, while Ray with firearm drawn and pointing back and forth at the two passengers, approached the backseat passenger side of the vehicle where the deceased, Tristian Clark was seated.

20.    Beasley commanded Johnson to let down all the Honda's windows including the backseat windows where Mr. Clark was seated behind Green and to show his identification to which Johnson complied by showing his identification on his cell phone.

21.    Beasley commanded Johnson to exit the Honda and then walked Johnson to the back of the vehicle with a gun drawn and pointed at Johnson's head at all times.

22.    At the same time as Johnson was being held at gunpoint, behind the vehicle, Defendant Ray first approached Tristan Clark's backseat window with firearm drawn and pointed at Clark's head and Ray addressed Mr. Clark by his first name as he obviously recognized Clark.

23.    Defendant Ray while still holding the firearm, ordered passenger Green to show his identification to which Green complied. Defendant Ray then immediately turned his firearm and attention back to Clark who was sitting in the back seat with his hands up and posing no threat to the defendants, himself or anyone else.

24.    Defendant Ray, with his weapon still pointed at Clark's head, began to berate Clark with statements to which Clark did not immediately respond.

25.     Clark, in fear for his life, began to retreat toward the driver's side back seat when defendant Ray, continued to yell at Tristan who continued to retreat in fear of his life with Ray's firearm still pointed at close range to Clark's upper body.

26.     Defendant Ray with malicious intent to further deprive Clark of this constitutional rights, shoved, then reached inside the open window grabbing at Clark in the chest area still with his firearm drawn in his right hand; pointed at Clark's head, and while Clark's hands were still in the air, fired four fatal shots into the head and chest areas of Clark, who fell slumped back and dead from Ray's close-range gunshots.

27.     The autopsy reports revealed Ray fired four (4) close range deadly gunshots which struck the 24-year-old Clark in the head at the right chin area; the right neck after entering below and just behind right ear; the upper right chest and the lateral right chest areas.

28.     Witnesses Johnson and Green have stated Tristan Clark did not fight back and instead had his hands up during this deadly encounter with Beasley and Ray.

29.     Beasley and Ray attempted to cover up the unjustified homicide, by pulling Clark's lifeless body from the driver side of the back seat and laid Clark's body on the ground outside of the vehicle, before

putting the lifeless body back in the vehicle on the passenger side to of the
back seat to cover up the fact that Clark was retreating and not posing a threat
to Ray or others.

30.     Johnson was placed under arrest and taken to Tuscaloosa Police
headquarters and questioned about this incident. Johnson was then taken to
Tuscaloosa County Jail and charged with Failure to Appear on a prior case.
Johnson was never charged with an improper tint violation or any other
traffic related charges related to the traffic stop that led to the killing of
Tristan Clark.

31.     Green was taken to the police station and questioned but was
not charged with any criminal offenses, although it is believed Green was in
possession of a firearm that was found in the vehicle.

32.     Upon information and belief defendant Beasley wore a blue and
orange jacket during the traffic stop and killing of Clark. Ray is believed to
have worn a gray jacket with black letters during the deadly encounter.

33.   At no time during the traffic stop and killing of Clark did
Beasley take any action to intervene to stop Ray from using excessive deadly
force in killing Clark.

34.     As a result of the attack by Ray and Beasley, Mr. Clark suffered deprivation of his constitutional civil rights, unjustified and unreasonable deadly force resulting in loss of his life.

35.     As a result of the deadly use of force, Mr. Clark lost his life through no fault of his own.

## Claims for Relief-Count I

**EXCESSIVE FORCE – VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS PURSUANT TO 42 U.S.C. §**
*Plaintiff v Beasley and Ray in Official and Individual Capacities*

36.     The conduct by the Defendants Beasley and Ray as identified in this count and described herein constituted unreasonable excessive and deadly force in violation of the Fourth Amendment of the United States Constitution and clearly established law to be free from unlawful search and seizure.  At all material times, Defendants Beasley and Ray were each acting under color of state law, as agents of Tuscaloosa, and within the scope of their employment and authority as duly certified law enforcement officers of the City of Tuscaloosa in deprivation of Clark's Fourth Amendment rights under the United States Constitution to be free from the use of unreasonable excessive deadly force.

37.   Upon information and belief, each Defendant officer was deliberately acting in accordance with a City of Tuscaloosa, Alabama pattern, practice, or custom of using unreasonable excessive force during the seizure of individuals

such as Mr. Clark who had a right to ride in the back seat as a passenger and at no time did Mr. Clark take any action justifying the deprivation of his clearly established right to be free for unreasonable deadly force resulting in his horrific death while being detained by Beasley and Ray.

38.     As a direct and proximate result of the violent and deadly attack, Mr. Clark was killed by the gunshots fired into his body by defendant Ray.

39.     The conduct of each defendant officer was intentional, outrageous, and demonstrated evil motive and a reckless or callous indifference to Mr. Clark's rights, thus entitling him to punitive damages under federal and Alabama law.

2.     40.     At all material times, Beasley, nor Ray had a reasonable fear of imminent bodily harm when Ray approached Mr. Clark with his weapon pointed at Mr. Clark's head and as evidenced by Mr. Clark retreating in fear of his own life. Nor did Ray have a reasonable belief that any other person was in danger of imminent bodily danger from Mr. Clark.

41.     Every reasonable officer would have known that using deadly force against a compliant, individual retreating who is not resisting and complying, constitutes excessive force in violation of the Fourth Amendment.

42.     Ray's use of deadly force in firing four deadly shots into the head and upper torso of Clark was objectively unreasonable and violated clearly established law to be free from illegal search and seizure. Beasley failed to

intervene to stop Ray from committing the unreasonable and excessive use of deadly force.

43.    As a result of Beasley's and Ray's unjustified, excessive, illegal, and unreasonable deadly use of force, Mr. Clark died at just 24 years of age leaving three minor children without their father forever.

44.    Punitive damages are available against Beasley and Ray and are hereby claimed as a matter of federal common law under *Smith v. Wade, 461 U.S. 30 (1983)*, and, per Alabama Wrongful Death Statute as set out in **Code of Alabama Section 6-5-410** for the wrongful act, omission, or negligence causing death.

45.    WHEREFORE, the Plaintiffs respectfully asks the Court to award them compensatory damages against each defendant officer at an amount that is fair and reasonable, for punitive damages, costs, and attorneys' fees, for injunctive relief against each defendant officer, barring him from engaging in unlawful patterns and practices as described herein, and for such other legal or equitable relief the Court deems appropriate. To the extent Mr. Clark prevails in the instant case, his estate and children are entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**Count II - 42 U.S.C. §1983 - _Monell Liability_**
_Plaintiffs v City of Tuscaloosa, Chief Blankley_

46.     The City of Tuscaloosa is vested with all the powers of said city connected with an incident to the establishment, maintenance, appointment, removal, discipline, control, and supervision of its police force, subject to the limitations contained and the provisions of municipalities in the State of Alabama and may make all rules and regulations for the efficiency and discipline, and promulgate and enforce general and special orders for the government of the same, and have the care and custody of all public property connected with the Police Department of the city. Chief Blankley is authorized to supervise, train, discipline and exercise control over the rules, regulation and policies of Beasley and Ray and the police department.

47. The Mayor, the City Council, and the Police Chief had final policymaking authority with regard to establishing written policies and training programs governing the conduct of TPD officers performing policing functions on behalf of the City.

48.     The Mayor, the City Council, and the Police Chief established and/or approved of TPD's written policies and training governing the conduct of TPD officers performing policing functions.

49.     The written policies and training established and/or approved by The Mayor, the City Council, and the Police Chief constitute the official policy of the City and were the moving force behind and caused Plaintiffs death.

50.     The City of Tuscaloosa, acting by and through its Mayor. Chief Blankley and/or other policymakers, had knowledge of TPD's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

51.    The City of Tuscaloosa, acting by and through its mayor and/or other policymakers, including Chief Blankley, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from TPD's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

52.     On or prior to December 20, 2023, City of Tuscaloosa, and Blankley with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of arrestees, detainees, and the like during arrest, including but not limited to the illegal detaining of individuals, unreasonable use of excessive force, illegal search and seizure during traffic stops.

53.      On and prior to December 20, 2023, The City of Tuscaloosa, and Blankley with deliberate indifference to the rights of detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene with the use of excessive force by TPD officers.

54.      On or prior to December 20, 2023, Tuscaloosa and Blankley with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, fostered or ratified a number of customs, patterns, or practices that condoned and required officers to treat the members of the Black Community of Tuscaloosa differently, including but not limited to implementing bodily injury and deadly force at a higher rate against Black men who did not pose a threat to officers.

55.      The City of Tuscaloosa and Blankley with deliberate indifference to the rights of arrestees, detainees, and the like, continued to employee defendants Beasley and Ray despite knowledge of their repeated unconstitutional, unlawful, or other improper conduct similar to those that occurred against and caused Tristan Clark his life.

56.      Tuscaloosa and/or Blankley had the power to terminate or appropriately discipline Beasley and Ray for their misconduct prior to December 20, 2023, but failed to do so despite the City's and Blankley's

knowledge of a pattern of complaints regarding excessive force and illegal

detainment and deliberate indifference to black individuals but refused and

failed to terminate Beasley and Ray which caused them to act with impunity

and without fear of retribution.

57.     The unconstitutional policies, practices, and customs defined

herein were the moving force behind Tristan Clark's death who was killed as a

direct and proximate result of the acts and omissions by the City of Tuscaloosa.

58.     Plaintiff is entitled to recovery of costs, including reasonable

attorneys' fees, under 42 U.S.C. § 1988.

59.     As a direct and proximate result of these wrongful acts and

omissions, Tristan Clark's next of kin have suffered pecuniary loss, including

medical and funeral expenses, loss of aid, counsel, guidance, advice, assistance,

protection, and support in an amount to be determined by a jury.

## Count III - 42 U.S.C. §1983 – F a i l u r e   t o   T r a i n *Canton Liability*
*Plaintiff v. City of Tuscaloosa and Blankley*

60. The City of Tuscaloosa failed to properly train or modify its

training for Defendant Officers and its other officers, including but not

limited to, matters related to the reasonable and appropriate use of force

during such arrests, and intervention in the excessive use of force by

fellow officers.

61.    Effectuating an arrest, using force to effectuate an arrest or detain, and intervening in the use of force is a usual and recurring situation which Tuscaloosa law enforcement officers and other agents encounter on a regular basis.

62.    As such, Tuscaloosa and Blankley were aware of the need for more and different training. Tuscaloosa specifically knew that its officers needed training regarding the use of deadly force restraint and was required to provide its officers with such training.

63.    Tuscaloosa and Blankley were aware that deprivation of the constitutional rights of citizens was likely to result from its lack of training and the failure to modify its training.

64.    As such, Tuscaloosa and Blankley were deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

65.    The failure to train and/or to appropriately modify training constituted official Tuscaloosa policies, practices, or customs.

66.    Blankley and Tuscaloosa's failure to train and/or to modify training was behind the acts and omissions the Defendants Agents 1 and 2 that resulted in Tristan Clark's death.

67.    As a direct and proximate result of Blankley and Tuscaloosa's acts and omissions, Tristan Clark was shot to death by defendant Beasley and is entitled to recover costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT IV - Wrongful Death v. CITY OF TUSCALOOSA, ALABAMA BLANKLEY, BEASLEY AND RAY

68.    The Plaintiffs re-allege paragraphs 1-67 of this Complaint as paragraphs 1-67 through Count III of this Complaint as though fully set forth herein.

69.   This Count is being brought pursuant to the Alabama Wrongful Death Act, Ala. Code § 6-5-410.

70.   The conduct of these defendants described herein in the deadly use of excessive force by Ray who was acting as an agent, servant, and/or employee acting within the scope of said agency, service, and/or employment, was within the corporate power of Defendant City of Tuscaloosa, under supervision of Blankley.

71.    At all times relevant it was the duty of City of Tuscaloosa by and through its authorized agent, servant and/or employees Ray and Beasley, to refrain from neglectful, careless, and unskilled conduct so as to not kill Tristan Clark.

72.   At all times relevant it was the duty of City of Tuscaloosa by and through its authorized agent, servant and/or employee Beasley, to refrain from neglectful, careless, and unskilled conduct in failing to intervene to stop Ray from killing Tristan Clark.

73. Beasley negligently, carelessly, and unskillfully failed to de-escalate the interaction with Tristan Clark that he knew or should have known Clark did not present a threat of injury to himself or others.

74.   Ray negligently, carelessly, and unskillfully failed to allow Clark opportunity to respond to Defendant's verbal commands prior to discharging his firearm killing Clark.

75.   Ray, neglectfully, carelessly, and unskillfully discharged his firearm at Clark who did not pose a threat of death or serious bodily injury to others and who had his hands up in a clear display of compliance and no threat.

76.   Ray negligently, carelessly, and unskillfully failed to warn Clark that he intended to use deadly force prior to discharging his firearm killing Clark.

77.   The actions of Defendant Ray in the hostile approach towards Clark with his firearm pulled and pointed at Clark, who was not in violation of any law or in the act of committing any illegal act that would constitute probable cause and who not driving the vehicle when pulled over for an alleged tint violation, and who presented no threat of death or great bodily harm to anyone, was done willfully,

maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law.

78.     As a direct and proximate result of one or more of the aforementioned acts and/or omissions, Tristan Clark was killed by Defendant Ray.

79.     As a further direct and proximate result, Plaintiffs, Jacoya Clark, as Administrator of the Estate of Tristan Clark, Deceased, D. W., K.C. and M. C. (minor children of Tristan Clark) suffered losses of personal and pecuniary nature, including emotional pain and suffering, and loss of the love, companionship, support and society of Tristan Clark for which they claim such damages against each defendant.

## CONDITIONS PRECEDENT

80.     Plaintiff reserves the right to plead and prove the damages to which he is entitled to at the time of trial. All conditions to Plaintiff's recovery have been performed or have occurred.

WHEREFORE, Plaintiffs, Jacoya Clark as Personal Representative of the Estate of Tristan Clark, minors D.W., K. C. and M. C., pray for judgment against Defendants individually and jointly as follows:

1.     As to Count I, a money judgment against Defendants' Beasley and Ray in the amount of $50,000,000 (Fifty Million Dollars) for compensatory,

special, and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest.

2.    As to Count II, a money judgment against Defendant City of Tuscaloosa and Blankley for punitive, compensatory and special damages in an amount of $12,500,000 (Twelve Million, Five Hundred Thousand Dollars) together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest.

3.    As to Count III, a money judgment against Defendant City of Tuscaloosa and Blankley for punitive, compensatory and special damages in an amount of $12,500.000 (Twelve Million, Five Hundred Thousand Dollars) to be determined together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest.

4.    As to Count IV, a money judgment against each Defendant individually and jointly for punitive, compensatory and special damages in an amount of $25,00.000 (Twenty-five Million Dollars) to be determined together with costs and disbursements, including reasonable attorneys' fees, under 42 U.S.C. § 1988 and prejudgment interest.

4.      For the appointment of a receiver or similar authority to ensure that the City of Tuscaloosa properly trains and supervises its officers, whether drug task force officers or other police officers employed by the City of Tuscaloosa.

5.      For a policy mandating and setting policies that all Tuscaloosa Police Officers including drug task force and/or other special designated law enforcement units wear, activate body and dash cameras for every instance of police stops, arrests or detaining of individuals within the jurisdiction of the City of Tuscaloosa, Alabama.

6.      For such other and further relief as this Court deems just and equitable.

## **<u>JURY DEMAND</u>**

The plaintiff demands a trial struck by the jury on all issues so triable.

Respectfully submitted this 3rd day of December 2025.

s/Reginald D. McDaniel (ASB7676L3M)
Reginald D. McDaniel Attorney at Law, LLC
8105th Avenue North, Suite B
Birmingham, AL 35203
205.433.6133 (P)
888.357.8447 (F)
rdm@reginaldmcdaniel.com

Of Counsel:

Roderick Cooks (ASB5819078R)
Lee Winston (ASB6407072L)
WINSTON COOKS, LLC

420 20th Street N.
Suite 2200
Birmingham, AL 35203
205.482.5174 (P)
rcooks@winstoncooks.com
*Attorneys for Plaintiff, Tristan Clark, deceased*

## JURY TRIAL DEMANDED

The Plaintiff hereby requests that the Summons and Complaint in this case be served upon the following Defendants by Certified Mail at their respective mailing addresses as follows:

Brent Blankley, Police Chief
City of Tuscaloosa, Alabama
3801 Trevor S Phillips Ave.
Tuscaloosa, AL 35401

Clerk, City of Tuscaloosa
City of Tuscaloosa, Alabama
2201 University Blvd.
Tuscaloosa, AL 35401

John Beasley
c/o City of Tuscaloosa Police Department
3801 Trevor S Phillips Ave.
Tuscaloosa, AL 35401

Austin Ray
c/o City of Tuscaloosa Police Department
3801 Trevor S Phillips Ave.
Tuscaloosa, AL 35401